IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 28, 2015

## ERICA HARRIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 102607     Bobby R. McGee, Judge**

---

**No. E2014-01893-CCA-R3-PC – Filed July 16, 2015**

---

Petitioner, Erica Harris, filed a petition seeking post-conviction relief from her conviction for the sale and delivery of 0.5 grams or more of cocaine. Petitioner alleges that she received ineffective assistance of counsel. Specifically, she alleges that trial counsel failed to communicate to her a plea offer that had been formally made to prior counsel and that he dissuaded her from testifying on her own behalf at trial. After a hearing, the post-conviction court dismissed her petition. Upon thorough review of the record and applicable authorities, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Erica Harris

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

This is an appeal from the Knox County Criminal Court's denial of Petitioner's petition for post-conviction relief.

On March 9, 2011, Petitioner was convicted by a Knox County jury of the sale and delivery of 0.5 grams or more of cocaine. The trial court merged her convictions and sentenced her to serve seventeen years' incarceration. On appeal, this Court affirmed Petitioner's conviction and sentence. *State v. Erica Harris*, No. E2012-01107-CCA-R3-CD, 2013 WL 1190826, at *3 (Tenn. Crim. App. Mar. 25, 2013), *perm. app. denied* (Tenn. Aug. 14, 2013).

*Trial*

Petitioner's conviction arose from a controlled drug purchase on August 24, 2009. The purchase involved a confidential informant named Francis Brady. Ms. Brady testified that she was familiar with Petitioner and two of her sons. Ms. Brady testified that the plan was for her to go to Petitioner's residence on August 24 and purchase crack cocaine from "just whoever was in the residence." *Id*. at *1. Ms. Brady asked Petitioner for $100 worth of crack cocaine. Petitioner went to the kitchen and brought out a DVD case with cocaine rocks on it. She told Ms. Brady that the cocaine belonged to her son. Petitioner attempted to call her son to see if she could give the cocaine to Ms. Brady. When her son did not answer the phone, she agreed to let Ms. Brady have the drugs. Ms. Brady said that Petitioner gave her a "bread wrapper" to put the cocaine in, and Ms. Brady gave Petitioner the $100 of buy money. *Id*.

Ms. Brady was fitted with a recording device. An audio recording of the transaction—which this Court described as "largely unintelligible"—was admitted into evidence and played for the jury. *Id.* The voices on the recording "are barely audible over the static associated with the equipment being hidden inside Ms. Brady's clothing and the very loud barking of a dog throughout a great deal of the transaction"; however, a woman's voice can be heard identifying herself as "Erica." *Id*. at *5. Ms. Brady identified Petitioner as the person she interacted with during the recorded transaction.

Officer Michael Geddings of the Knoxville Police Department supervised Ms. Brady in her role as a confidential informant. Ms. Brady told Officer Geddings that she had previously purchased drugs from Petitioner's son while Petitioner was present in the residence. Officer Geddings monitored the August 24, 2009 transaction from a vehicle parked outside of the residence. Ms. Brady turned over the rock-like substance she purchased, which was determined to be 0.9 grams of crack cocaine. Petitioner's residence was 597 feet from Green Magnet Elementary School.

On September 15, 2009, Officer Geddings and Officer Joshua Schaffer executed a search warrant at Petitioner's residence. During the search, Petitioner made a statement to Officer Schaffer that "the crack she had sold . . . was her son's and that her son was the one that obtained the crack cocaine and that if he was not there on that occasions [*sic*] she sold." *Id*. at *2.

Petitioner and trial counsel engaged in a *Momon* colloquy on the record. Petitioner did not testify on her own behalf.

Petitioner presented the testimony of her son, Tramell Harris. Mr. Harris testified that he lived with Petitioner, her husband, and his siblings. He admitted selling cocaine out of Petitioner's residence, and he pleaded guilty in juvenile court to possession of cocaine. Mr. Harris stated that his aunt, Petitioner's sister, stayed with the family in August of 2009 and that she used and sold cocaine. Mr. Harris stated that his mother did not sell cocaine. Mr. Harris conceded that during the September 15, 2009 search, cocaine was found in Petitioner's closet but explained that he placed it there. Mr. Harris was not home during the August 24, 2009 transaction and did not know whether Petitioner sold drugs to Ms. Brady on that occasion.

In rebuttal, the State called Petitioner's sister, Andrea Johnson Drury, and recalled Ms. Brady. Ms. Drury denied any involvement in the sale of cocaine. Ms. Brady denied having purchased drugs from Ms. Drury and again identified Petitioner as the person from whom she purchased cocaine.

*Post-Conviction Hearing*

On November 12, 2013, Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed on February 26, 2014. Petitioner alleged that she received ineffective assistance of counsel because trial counsel failed to communicate to her a plea offer that had been formally made to prior counsel and because he dissuaded her from testifying on her own behalf at trial. An evidentiary hearing was held on August 28, 2014.

Petitioner testified that she was initially represented by the Public Defender's Office. Upon learning the identity of the confidential informant, who the State intended to call as a witness, the public defender advised Petitioner that he had to withdraw from her case because of a conflict of interest. Before withdrawing, the public defender informed Petitioner that the State had offered her an eight-year sentence but that he could not discuss it with her further. The trial court granted the public defender's motion to withdraw and appointed trial counsel.

Petitioner met with trial counsel and discussed her case. Petitioner remembered discussing with trial counsel a plea offer where she would serve fifteen years. Trial counsel explained to Petitioner that if she were convicted at trial, she could serve between fifteen and twenty years and that her sentence would have to be served at 100 percent because the offense occurred within a school zone. Petitioner wanted probation, but trial

counsel explained that she would not receive a probationary sentence. Petitioner told trial counsel that she would rather have a trial than accept the fifteen-year offer.

Petitioner did not ask trial counsel about the prior eight-year offer. Petitioner denied that she would have rejected any offer that included a prison sentence. Petitioner testified that she would have "of course" accepted an offer resolving all of her charges in three different cases with concurrent sentences of twelve years, eight of which would have to be served at 100 percent.

Trial counsel informed Petitioner that the State was planning to call a confidential informant to identify her as the person who sold cocaine. Petitioner's defense was that she was not involved in the transaction and that it was, in fact, her sister who sold cocaine to the confidential informant. Petitioner said that the cocaine belonged to her son. Trial counsel advised her that if she testified, the State would "bring up the gun thing"—that a gun was found during the search of her residence. Petitioner testified that she had no prior felony convictions; her only prior conviction was for driving under the influence. After discussing with trial counsel whether she should testify, Petitioner made the decision not to testify the day of trial. Petitioner did not know her sister would be called to testify in rebuttal.

Further at the post-conviction hearing, Petitioner testified that on the day of the incident, she was present at her residence but was not involved in the drug transaction. Petitioner said that Ms. Brady, whom she did not know well, stopped by her residence that day, and Petitioner introduced Ms. Brady to her husband, with whom Petitioner was leaving to go to the store. Ms. Brady told Petitioner, "I need some for a hundred," and asked for one of Petitioner's sons. Petitioner offered to call her son, but he did not answer the phone. Petitioner's sister, who was also at the residence, came downstairs carrying a CD case with crack cocaine on it. Ms. Brady grabbed the cocaine, and Petitioner's sister gave her a piece of a bread bag to wrap it in. Ms. Brady then placed a folded up $100 bill on top of the CD case.

Petitioner denied selling cocaine to Ms. Brady on several prior occasions. She said that Ms. Brady always bought cocaine from her sister. Petitioner explained that in August 2009, she and her sister looked alike but that, by the time of trial, her sister had gained weight. Petitioner admitted that she sold cocaine when she lived in Chattanooga.

Trial counsel testified that he had practiced law for eight years, primarily criminal defense, and that he had tried about 20 jury trials. Trial counsel was appointed to represent Petitioner on her three drug cases, including the one at issue, after her prior counsel withdrew. Petitioner's original attorney mailed trial counsel Petitioner's rather large file. Included in the file was a printed email from the prosecutor making a formal plea bargain offer to settle Petitioner's outstanding cases. The State was willing to

reduce the Class A felony school zone cases to Class B felony school zone cases in exchange for concurrent twelve-year sentences, eight of which would be required to serve at 100 percent. The email indicated that the offer would expire if not accepted before pre-trial motions were heard. Trial counsel remembered the sense of urgency in relation to the offer because of the expiration date and testified that he "must have" discussed it with Petitioner.

Trial counsel testified that he met with Petitioner and discussed the facts and circumstances of her case. Petitioner "was adamant that she did not commit the offense" and that she would not "accept any penitentiary sentence." Trial counsel made clear to her that the State was not going to offer probation, that any offer would include going to prison. Trial counsel did not specifically recall a fifteen-year offer, but explained that it was not unusual to receive a later, less-favorable offer closer to trial. On cross-examination, when asked if he went over the eight-year offer with Petitioner, trial counsel responded "It's my belief and recollection that I did, yes."

In preparing for trial, trial counsel and Petitioner discussed the quality of the audio recording, the confidential informant's potential testimony, and possible challenges to the map indicating that the offense occurred in a school zone. Trial counsel interviewed Petitioner's son, who was willing to testify that he and his aunt, not his mother, were the ones who sold drugs out of that residence. Based on this statement, the poor quality of the audio recording, and Petitioner's claim of innocence, trial counsel believed the State's case "was not as strong as it could be." Trial counsel's main concern was the confidential informant's identification of Petitioner. Trial counsel explained that his theory was not that the confidential informant was intentionally lying, but that she was mistaken because of the strong resemblance between Petitioner and her sister. Trial counsel believed the case, though not a "slam dunk," was at least "winnable."

Trial counsel initially planned for Petitioner to testify at trial. However, trial counsel changed his mind when the trial court ruled prior to trial that the Petitioner's statement regarding past sales of cocaine would be admissible if she testified that she did not previously sell cocaine. The statement was nonetheless admitted into evidence during the State's case-in-chief as an admission of guilt in relation to this particular drug sale. Additionally, Petitioner's testimony could potentially open the door to evidence of other crimes she had committed being admitted under Rule 404(b) to prove her identity. Trial counsel did not recall Petitioner being charged with possession of a gun or the court ruling that evidence of a gun would be admissible if the Petitioner testified. Trial counsel explained that the only potential benefit of Petitioner's testimony would be to deny culpability, which the jury would likely assume was her position given the fact that they were having a trial. Petitioner seemed to agree with his advice and decided not to testify. Trial counsel again discussed with Petitioner whether she should testify after the State

rested its case-in-chief, and Petitioner stated during the *Momon* colloquy that it was her decision not to testify.

Trial counsel recalled that Petitioner's sister, Ms. Drury, testified as a rebuttal witness for the State that she did not sell cocaine. The prosecutor had Ms. Brady enter the room while Ms. Drury was testifying; Ms. Drury denied knowing Ms. Brady and Ms. Brady denied knowing Ms. Drury. Ms. Brady affirmatively testified that she purchased drugs from Petitioner, not Ms. Drury. Trial counsel explained "that was the point at which we lost the trial for certain." Trial counsel did not discuss with Petitioner the option of her testifying in rebuttal.

With regard to Petitioner's claim about the plea offer, there was an exchange on the record prior to trial, but Petitioner and trial counsel disagreed as to which plea offer was being discussed. The transcript of the trial was included in the record on appeal and relates that the following exchange occurred:

> [Prosecutor]: . . . [Y]our Honor, we want the record to be clear that the State, I understand it became an issue this morning, the State made an offer to [Petitioner] to previous counsel and apparently that offer was not communicated to [Petitioner] by previous counsel. [Trial counsel] has had an opportunity to review that offer, and it was communicated to her this morning. It's the State's position that she's elected not to take that offer. I'm not going into details of it but we don't want it to become an issue later on.
>
> [Trial Court]: All right. . . . Has she rejected the offer?
>
> [Trial Counsel]: Yes, your Honor.
>
> [Trial Court]: Very well.
>
> [Prosecutor]: I'd like -- I'd like for her to speak that. I don't want [trial counsel] to do that for her.
>
> . . . .
>
> [Trial Court]: [Petitioner], do you reject the plea offer that was offered -- that your lawyer told you about this morning?
>
> [Petitioner]: Yes.

At the post-conviction hearing, Petitioner testified that she understood that this exchange was in reference to the fifteen-year offer. On direct examination, trial counsel stated that the exchange was in reference to the later, less-favorable offer, though he could not specifically recall whether that was a fifteen-year offer. Then, during cross-examination, trial counsel stated that he understood the exchange to be in reference to the eight-year offer contained in the email he had received from Petitioner's previous counsel.

At the conclusion of the testimony and argument, the post-conviction court stated its findings of fact and conclusions of law from the bench. With regard to the plea offer, the post-conviction court found that Petitioner "failed to establish by clear and convincing evidence that any plea offer was made but not communicated to her." The post-conviction court noted that Petitioner testified that the only offer she would have accepted was one that involved probation and that there was no evidence of a probationary offer being made. The post-conviction court found that "the plea offers were communicated to [Petitioner] and that she did reject them and intended to reject them because she was not going to agree to go to prison, maintaining that she was innocent." The post-conviction court further noted, "The purpose of this procedure, post[-]conviction relief, is not to give the defendant a second chance to make a decision differently than she made it at the time of the trial."

With regard to Petitioner not testifying at trial, the post-conviction court found that trial counsel discussed the decision with Petitioner "at some length." The post-conviction court noted that "there was a strong disadvantage, which is if she took the stand to testify[,] the State would obviously be able to cross[-]examine her, and if she denied engaging in the sale of drugs those were circumstances which would open the door and allow in the evidence of other drug sales." The post-conviction court found that trial counsel gave "careful consideration . . . to the disadvantages of her testifying as opposed to the advantages" and made a "legitimate," "tactical decision" in advising Petitioner not to testify.

The post-conviction court denied Petitioner's petition for post-conviction relief. Petitioner filed a timely notice of appeal.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or

substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if the petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the Strickland test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.*

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

Petitioner argues that trial counsel failed to communicate to her a formal plea offer made to her previous attorney about which trial counsel had knowledge. A defendant is entitled to effective representation during plea negotiations as well as during trial. *Missouri v. Frye*, -- U.S. --, 132 S.Ct. 1399, 1407-09 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 58-59, (1985). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S.Ct. at 1408. "A fair trial does not correct trial counsel's deficient performance in failing to convey a plea offer because of 'the reality that criminal justice today is for the most part a system of pleas, not a system of trials.'" *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *Lafler v. Cooper*, -- U.S. --, 132 S.Ct. 1376, 1381 (2012)). In order to establish prejudice, there must be a reasonable probability that the petitioner would have accepted the plea offer had it been properly conveyed. *State v. Garrison*, 40 S.W.3d 426, 431 (Tenn. 2000).

Petitioner has not shown by clear and convincing evidence either that trial counsel failed to communicate a more favorable offer to her or that she would have accepted it had it been properly conveyed. Petitioner testified that she was informed by her previous attorney about an offer that included serving eight years just before he withdrew from her case, but she did not ask trial counsel about the offer. Trial counsel testified that the email officially communicating the offer from the prosecutor was contained within the case file he received from Petitioner's previous attorney. The email "stood out" to him

because of the offer's expiration date. Trial counsel testified that he recalled a sense of urgency related to the offer and stated he "must have" discussed it with Petitioner. Trial counsel testified that Petitioner was adamant that she would not accept a plea offer that included jail time and that she maintained her innocence. Given this testimony, the post-conviction court discredited the Petitioner's testimony that she would have accepted an offer that included eight years of prison time. Additionally, prior to trial, the Petitioner officially rejected on the record an offer made "to previous counsel and apparently . . . not communicated to [Petitioner] by previous counsel." From the evidence, it appears that this exchange was in reference to the offer contained in the email from the prosecutor to the public defender who originally represented Petitioner. Petitioner has failed to show by clear and convincing evidence either deficient performance on the part of trial counsel for failing to communicate a formal plea offer to her or prejudice in that she would have accepted the plea offer had it been properly conveyed. Petitioner is not entitled to relief on this basis.

Petitioner also contends that trial counsel was ineffective for advising her not to testify on her own behalf. She asserts that, without her testimony to rebut that of the confidential informant, Ms. Brady's "damaging testimony was left unchallenged by any eyewitness who was present at the time of the transaction." A defendant in a criminal case has a fundamental right to testify on her own behalf at trial, which must be personally waived by the defendant. *Momon*, 18 S.W.3d at 161. This Court has identified the following five factors that "would tend to indicate ineffective assistance" in a case where trial counsel fails to call the defendant to testify:

> (1) only the victim and the defendant were present when the offense was committed;

> (2) only the defendant could present a "full version of her theory of the facts";

> (3) the defendant's testimony could not be impeached by prior criminal convictions;

> (4) the defendant could give an account of the relationship with the victim; and

> (5) the attorney had let in objectionable, prejudicial testimony with the intention of clarifying it with the testimony of the defendant.

*State v. Zimmerman*, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991) (quoting *State v. Dorothy Renate Gfeller*, No. 87-59-III, 1987 WL 14328, at *5 (Tenn. Crim. App. July 24,

1987)); *see also Candance Carol Bush v. State*, No. M2014-00824-CCA-R3-PC, 2015 WL 2127982, at *12 (Tenn. Crim. App. May 5, 2015).

In this case, the post-conviction court found that trial counsel discussed with Petitioner "at some length" the advantages and the disadvantages of her testifying. Even though Petitioner's statement about prior drug sales was admitted during the State's case-in-chief, *see Erica Harris*, 2013 WL 1190826, at *4 (upholding admission of the statement), there remained a risk that the State would use this evidence to impeach her if she testified and denied selling drugs. Trial counsel called Petitioner's son to present the "full version of her theory of the facts," namely that he and his aunt, not Petitioner, were the ones who sold cocaine. Trial counsel testified that there was very little benefit to Petitioner testifying other than to deny culpability. According to Petitioner's account, she and the confidential informant were not the only people present during the transaction. However, Petitioner's sister testified for the State, denying any involvement. Trial counsel elected not to call Petitioner's husband after determining he would not have made a good witness.[1] There is no indication that trial counsel "let in objectionable, prejudicial testimony with the intention of clarifying it with the testimony of" Petitioner or that he made any unfulfilled promises to the jury that Petitioner would testify. *See Zimmerman*, 823 S.W.2d at 227. Finally, Petitioner engaged in a *Momon* colloquy during trial; Petitioner has not claimed that the waiver of her right to testify was unknowingly or involuntarily made. Therefore, Petitioner has not established that trial counsel was ineffective for failing to call her as a witness to testify on her own behalf.[2] Petitioner is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE

---

[1] Because Petitioner's husband did not testify at the post-conviction hearing, we cannot speculate as to what his testimony would have been. Petitioner did not raise the failure to call her husband as a ground for post-conviction relief, but if she had, the burden would have been on her to produce him as a witness at the hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

[2] Because Petitioner has failed to establish deficient performance, we need not address whether trial counsel's performance prejudiced the defense. *Goad*, 938 S.W.2d at 370.

-11-